In re Richard A. **ROBSON**, Debtor.

**AMERICAN SECURITY BANK, N. A., Plaintiff,**

v.

**Richard A. ROBSON, Defendant.**

In re Frances Ann **NIELSEN**, Debtor.

**AMERICAN SECURITY BANK, N. A., Plaintiff,**

v.

**Frances Ann NIELSEN, Defendant.**

**Bankruptcy Nos. 80–01020, 80–01019. Adv. Nos. 80–0150, 80–0151.**

United States Bankruptcy Court, N. D. Alabama.

Feb. 3, 1981.

David B. Anderson, Birmingham, Ala., for plaintiff.

Robert B. Rubin, Birmingham, Ala., for debtors.

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

## FINDINGS, CONCLUSIONS, AND ORDER, AFTER REMAND

### STATEMENT OF THE CASES

1. Each of the above-styled cases was commenced by a voluntary petition filed in this Court, under Chapter 11, Title 11, United States Code, on February 21, 1980, and is still pending before this Court under said Chapter 11.

2. Each of the above-styled adversary proceedings was commenced by a complaint filed in the Chapter 11 case by American Security Bank, N.A. [hereinafter referred to as the "bank"], against the debtor, on February 26, 1980.

3. Each complaint alleged that the debtor had pledged to the bank shares of capital stock of Mobile Fuel Shipping, Inc. [hereinafter referred to as "Mobile F/S"], to secure the payment of the latter's promissory notes to the bank (totalling more than four million dollars), plus advances, that the debts were in default and had been accelerated, that payment in full had been demanded, and that the bank had notified the debtor of its intention to exercise its pledge rights as to the stock.

4. The relief sought by each complaint is expressed in the bank's prayer that the Court, "pursuant to § 362(d) of the Bankruptcy Code," grant "relief from the automatic stay . . . and permission to foreclose" by a sale of the stock "or, in the alternative, grant to the Bank adequate protection of its interest in the Stock pursuant to § 361 of the Bankruptcy Code."

5. As a basis for this relief, the bank alleged that the corporate stock was "depreciating," that the bank lacked "adequate protection of its interest in the Stock," that the debtor had "no equity in the Stock," and that the stock was "not necessary to an effective reorganization . . . ."

6. By consent, the stay was continued in force pending the further order of the Court; and, after preliminary hearings, the proceedings were consolidated for trial and tried before the bankruptcy judge, without a jury, on May 1 and 2, 1980, with the bank given leave to introduce an additional exhibit by May 9, 1980.

7. On June 10, 1980, the bankruptcy judge filed findings of fact, concluded that the bank was not entitled to have the automatic stays under Section 362 lifted at that time, and entered an order denying relief on the complaints.

8. On June 20, 1980, the bank filed a notice of appeal from the bankruptcy judge's order, and on October 1, 1980, the district judge reversed the order and remanded the proceedings to the Bankruptcy Court.

9. In an accompanying opinion, the district judge agreed with the bank's conten- tion that it was clearly erroneous for the Bankruptcy Court to deny relief under Section 362(d)(1),[1] on a basis that "[t]he bank made no substantial contention that it was entitled to this relief . . .," for the district judge noted that said relief was requested in the complaints and was the subject of a major portion of the argument of counsel for the bank at the close of the trial and found that "[m]uch of the Bank's evidence was addressed to this issue."

10. The district judge concluded that the order of the Bankruptcy Court contained "no findings of fact or conclusions of law addressed to this aspect of the Bank's claim," other than the general statement noted and that the order "must . . . be reversed with instructions to the Bankruptcy Court to reconsider the evidence before it and determine whether the debtors have met the burden of proof cast upon them with regard to the § 362(d)(1) claim of the Bank," as provided by Section 362(g).[2]

11. The district judge also expressed "the opinion that on remand the Bankruptcy Court should reconsider its findings of fact and conclusions of law with regard to the Bank's § 362(d)(2) claim."[3]

12. The district judge "viewed as clearly erroneous" the denial of relief under Section 362(d)(2), if based, as it appeared, upon an inability of the "debtors" [sic] to satisfy the Court "as to the value of the shares of capital stock . . .," since it was only necessary for the bank to prove that the shares had a fair market value of less than the debts secured.

---

**1.** 11 U.S.C. § 362(d):

, On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
(2) with respect to a stay of an act against property, if—
(A) the debtor does not have an equity in such property; and
(B) such property is not necessary to an effective reorganization.

**2.** 11 U.S.C. § 362(g):

In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—
(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property: and
(2) the party opposing such relief has the burden of proof on all other issues.

**3.** Note 1, *supra.*

## I. RECONSIDERATION ON REMAND

At the outset there should be disposed of an element of confusion introduced into these proceedings by the portion of the bank's complaint which prayed, alternatively, that the Court "grant to the Bank adequate protection of its interest in the Stock pursuant to § 361 of the Bankruptcy Code." That section begins:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—. . . .

■ Section 361 then illuminates and reveals the concept of "adequate protection" as this term is used in the next three sections. Section 361 lists the means by which "adequate protection" may be given to a party entitled to this immunity from loss. Notwithstanding a use of words in Section 361 which might indicate that the Court may be called upon to devise schemes to provide "adequate protection", this section confers no such right upon a secured party seeking leave to enforce a security interest in collateral. The legislative history of this section makes clear that devices to supply "adequate protection" must be the product of the debtor or trustee in such a case.[4] If the debtor or trustee proposes such a device, the Court, guided by Section 361, will adjudicate whether "adequate protection" has been provided, but the Court will not become embroiled in concocting an alternative to the creditor's prayer for relief from the automatic stay under Section 362. Thus, the portion of the bank's prayer that the Court, "in the alternative, grant to the Bank adequate protection" is due to be disregarded.

## II.

In the present proceedings, the Court is under a mandate "to reconsider the evidence before it and determine whether the debtors have met the burden of proof cast upon them with regard to the § 362(d)(1) claim of the bank." That statutory provision requires the Court to grant relief from the stay for *cause,* "including the lack of adequate protection of an interest in property" of the bank. Here, such an interest is the bank's right to sell the debtors' shares of stock in Mobile F/S and apply the proceeds toward payment of the defaulted debts owed by Mobile F/S to it.

The debtors did not offer any scheme or device to supply "adequate protection" of the bank's interest in the capital stock; however, "adequate protection" may exist as an inherent or as a conjunctive element in all of the circumstances affecting this interest. The question for the Court was whether the evidence reasonably satisfied that the bank's right was adequately protected under the facts of this case.

■ Subsection (g) of Section 362 provides that, except for the issue of the debtor's equity in property, the party opposing the granting of relief from the stay has the burden of proof on all issues. The Court doubts that this provision is to be applied literally to *all other* issues which might arise, such as ·whether a creditor has an enforceable security interest in the subject property, as defined in Section 9–203 of the *Uniform Commercial Code.* Subsection (g) probably refers only to the primary issues arising under Subsection (d).

Section 362(e) provides for the proceedings which are to be had on a request for relief from the stay. The legislative history of this subsection casts much light on the rational of the provisions of Subsection (g), as to the burden of proof. An analogy is drawn between the proceedings on a request for relief from the stay and proceed-

---

4. . . . This section specifies the means by which adequate protection may be provided. It does not require the court to provide it. To do so would place the court in an administrative role. Instead, the trustee or debtor in possession will provide or propose a protection method. If the party that is affected by the proposed action objects, the court will determine whether the protection provided is adequate. The purpose of this section is to illustrate' means by which it may be provided and to define the contours of the concept. H.R.Rep.No.95–595, 95th Cong., 1st Sess. 338 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6295. See similar statement, S.Rep. No.95–989, 95th Cong., 2d Sess. 49 (1978).

ings on a request for an injunction to stay acts against the debtor or property of the debtor or estate.[5] In a proceeding for an injunction, the primary burden of proof would rest upon the debtor or the bankruptcy trustee, as the moving party. The automatic stay provided for by Section 362(a), of course, obviates any necessity for the debtor or trustee to make the application for a temporary restraining order. It casts upon the party seeking relief from the stay the task of bringing the matter before the Court, but once this is done the burden is upon the other party to satisfy the Court that the stay should not be lifted, at the preliminary hearing (if one is held) and again at the final hearing (excepting any question of the debtor's equity in the property).

Since "lack of adequate protection" is a ground for granting relief under Subsection (d)(1), the debtors had the burden, under Subsection (g), of affirmatively proving that "adequate protection" of the bank's interest in the stock existed, in the face of a continuance of the stay against sale of the stock by the bank, unless such "adequate protection" surfaced as a fact from the evidence presented by the bank.

The second issue in this proceeding arose under Subsection (d)(2), as to whether the debtors did not have any equity in the property. The statute, in Subsection (g), placed the burden of proof here upon the bank.

Evidence presented on that issue can have a cross effect upon the first issue of "adequate protection". The bank undertook to carry the burden of proving that each debtor did not have any equity in that debtor's stock, seeking to justify relief under Subsection (d)(2), but if it failed to carry that burden, the evidence presented by the bank on the subject of the debtor's lack of equity in the property conceivably could have a tendency to prove that the debtor did have some equity in the stock. If so, this might show that the bank's interest in the stock was "protected" (by the debtor's equity) against loss from the claimed diminishing value of the stock. The extent of such equity would determine whether the protection was "adequate" and, if so, for how long it might continue to be "adequate".

The third issue, also arising under Subsection (d)(2), was whether the stock was necessary to an "effective reorganization", under Chapter 11. The burden of proof on this issue rested upon the debtors, since it is not within the exception found in Subsection (g).

The second and third issues are conjunctively joined in Subsection (d)(2), requiring that the Court find both that a debtor had no equity in such debtor's stock and that the stock was not necessary for an effective reorganization, for the bank to be entitled to relief under this second part of Subsection (d). Thus, if the bank failed to carry its burden of proving that the debtor did not have any equity in the property (stock), the bank has not only defeated itself under Subsection (d)(2) but as well may have cast doubt upon its right to relief under Subsection (d)(1) on the ground ("cause") of inadequate protection of its interest in the shares of stock. The latter is, of course, not a necessary result, because the evidence produced by the bank may simply have left unresolved the question of whether the debtor had any equity in the property, and

---

5.   ... Because the stay is essentially an injunction, the three stages of the stay may be analogized to the three stages of an injunction. The filing of the petition which gives rise to the automatic stay is similar to a temporary restraining order. The preliminary hearing is similar to the hearing on a preliminary injunction, and the final hearing and order is similar to a permanent injunction. The main difference lies in which party must bring the issue before the court. While in the injunction setting, the party seeking the injunction must prosecute the action, in proceedings for relief from the automatic stay, the enjoined party must move. The difference does not, however, shift the burden of proof. Subsection (g) leaves that burden on the party opposing relief from the stay (that is, on the party seeking continuance of the injunction) on the issue of adequate protection.
H.R.Rep.No.95–595, 95th Cong., 1st Sess. 344 (1977), U.S.Code Cong. & Admin.News 1978, p. 6300.

the bank would still be entitled to relief under Subsection (d)(1), if the debtor failed to establish that the creditor was "adequately protected".

On the other hand, if the bank presented evidence sufficient to satisfy the Court that a debtor had no equity in that debtor's stock, three consequences are possible:

(1) The bank would be entitled to relief under Subsection (d)(2), if the debtor failed to prove that the stock was "necessary to an effective reorganization:" or

(2) The bank would not be entitled to relief under Subsection (d)(2), if the debtor proved that the stock was "necessary to an effective reorganization;" and

(3) The bank's right to have its interest in the stock adequately protected or to have relief under Subsection (d)(1) would confront the debtor with a near insurmountable burden of proof.

## III. FINDINGS OF FACT

From the admissible evidence received, the bankruptcy judge finds the facts in these proceedings to be as follows:

(1) Mobile F/S was engaged solely in the mining of coal, by the strip-mining method, in DeKalb County, Alabama, and its principal assets were mining equipment, land, and leases which it held for mining coal on the property of others;

(2) Mobile F/S was indebted to the bank in an amount exceeding four million dollars, on a debt which an officer of the bank testified was in the approximate sum of $4,242,000.00;

(3) Debtor Robson had guaranteed the repayment and other obligations of Mobile F/S with respect to this debt;

(4) Debtors Robson and Nielsen had pledged their respective shares of capital stock in Mobile F/S, as collateral to secure the performance of Mobile F/S under its debt-repayment agreements with the bank;

(5) Said pledged stock of Mobile F/S consisted of 4,500 shares owned by Debtor Robson and 1,000 shares owned by Debtor Nielsen, being 45% and 10%, respectively, of the stock of Mobile F/S;

(6) The remaining 4,500 shares of stock in Mobile F/S were owned by a third individual, who had guaranteed the performance of Mobile F/S under its debt agreements with the bank and also had pledged these shares of stock to secure such performance by Mobile F/S;

(7) The bank first acquired a security interest in the shares of stock of the three individuals (comprising the total shares of stock of Mobile F/S) as part of a single transaction, the security interests being given in exchange for the bank's waiving certain defaults by Mobile F/S;

(8) The bank also had prior security for the performance by Mobile F/S of its obligations under said debt agreements in the form of a mortgage on the rights and interests of Mobile F/S in real property and in the form of security interests in the personal property of Mobile F/S, constituting a first claim against all of the assets of Mobile F/S, with certain relatively minor exceptions;

(9) Mobile F/S was in default in the performance of its obligations under its debt-repayment agreements with the bank;

(10) Mobile F/S was itself a reorganization debtor in an involuntary case filed and pending in this Court, under Chapter 11 of said Title 11;

(11) After initial resistance by the debtor, an order for relief under said Chapter 11 was entered in the Mobile F/S case, by consent of that debtor; and, after a lengthy trial in that case, the Court, on April 8, 1980, directed the United States trustee to appoint a trustee to take possession of the property of the debtor;

(12) The shares of capital stock of Mobile F/S pledged by the debtors to the bank had no "market" and had no "fair market value" in any practical sense;

(13) The pledged shares of Mobile F/S had value only to the extent, if any, that the assets and profit potential of Mobile F/S had a fair market value in excess of its liabilities, with one exception;

(14) The shares of stock of Mobile F/S had an additional sole potential to the extent, if any, that its net operating loss of $2,395,000.00 could be utilized for income-tax benefits by the purchaser;

(15) Of Mobile F/S's corporate existence of about four years, more than the initial one-half had been taken up with: (a) acquiring land, coal-mining leases, rights of way or surface leases, and equipment; (b) drilling, testing, and mapping coal-mining properties; (c) building roads, dikes, and ponds; and (d) otherwise developing coal-mining sites and access properties;

(16) After its development stage, Mobile F/S launched its coal mining operations with the same equipment used in developing its mining properties, such as bulldozers, loaders, and huge dump trucks, but by the time that the Chapter 11 case was filed against it the concensus was that its properties were unsuited to a "dozer-loader" operation and that an expensive "dragline" operation was required;

(17) In addition, the financial reverses of Mobile F/S were produced or contributed to by an extremely long period of heavy rains, a long coal-miners' strike, and an event of vandalism which caused extensive damage to its equipment;

(18) The Mobile F/S project was under-capitalized;

(19) The value of Mobile F/S as a going concern was a matter of conjecture but may have been substantially in excess of its debts;

(20) The value of the capital stock of Mobile F/S was a matter of conjecture but may have been substantial;

(21) On April 30, 1978, Debtor Robson's shares of stock in Mobile F/S constituted over 95% of the value of his assets, as shown on his financial statement of that date, and the most significant subsequent change was an increase in this percentage due to the disappearance of value in the shares of stock held by him in another corporation;

(22) The bank's interest in the property in question here (the shares of stock of Mobile F/S owned by Debtors Robson and Nielsen) was adequately protected by the mortgage interests and security interests of the bank in the bulk of the assets of Mobile F/S, which assets encumbered in favor of the bank had a realizable value in excess of the debts owed to the bank by Mobile F/S;

(23) The bank's security interests in the shares of stock of Debtors Robson and Nielsen were linked to each other and linked to the bank's security interest in the remainder of the Mobile F/S stock (owned by the third stockholder);

(24) All of the shares of stock of Mobile F/S may have had a fair-market value in excess of the debt secured by them to the bank, and Debtors Robson and Nielsen had some equity in their respective shares of stock; and

(25) The shares of stock in Mobile F/S of Debtor Robson were necessary to an effective reorganization in his case.

## IV. DISCUSSION BY THE COURT

The plaintiff tried these proceedings by the "popcorn" approach, i. e., by throwing in the kernels of evidence to pop out at apparent random. Also, the plaintiff appears to have placed some reliance on the fact that Mobile F/S was itself the subject of an involuntary Chapter 11 case and that a long trial on a motion for a trustee had resulted in one's being appointed, supposedly creating a presumption of some sort of vague "lack of adequate protection" and of insolvency of Mobile F/S.

Much of the testimony of the plaintiff's expert witnesses was of a general nature, supposedly applied to certain proven facts; however, it was not sufficiently specific to be applied to the value of Mobile F/S or of its assets encumbered to the bank. Testimony of how values were calculated for rarely-occurring sales of coal mining leases took no account of the expensive and time-consuming work which had been performed in packaging, testing, mapping, and developing the lands of Mobile F/S before the first ton of coal was mined and sold.

■ It appearing from the evidence that the bank's security interests in the shares of stock of the debtors were adequately protected by its mortgage and security interests in most of the assets of Mobile F/S and no other "cause" appearing from the evidence or being alleged, the bank was not entitled, under Subsection (d)(1), to relief from the stay provided by Subsection (a) of Section 362.

■ The bank not having proved that there was no equity of the debtors in the stock and that fact not appearing from the other evidence, the bank failed to carry the burden of proof which it had under Subsection (g)(1), and it was not entitled to relief under Subsection (d)(2). Under the circumstances of this case, the bank could not treat each pledgor's stock separately, by comparing the value of that block of stock to the total debt secured by all of the stock. If that method for determining equity or lack of equity were valid, Ms. Nielsen would have been found to have no equity in her stock, even if the bank proved that her stock had a value of $4,200,000 and all of the stock pledged to secure the debt of $4,242,000 was worth 42 million dollars.

■ Aside from any question of whether Debtor Robson had any equity in his shares of stock, relief from the stay could not be granted to the bank under Subsection (d)(2), as to Mr. Robson's shares, because they were obviously necessary to an effective reorganization in his case. No evidence on the like issue in Debtor Nielsen's case was introduced.

Besides the cross effect which evidence may have between Subsections (d)(2) and (d)(1), it should be noted that in this case there is a cross relation and a cross effect between the bank's mortgage and security interests in assets of Mobile F/S and the bank's security interests in the shares of stock of Mobile F/S. The greater the value placed on those encumbered assets of Mobile F/S, the more adequately protected was its security interests in the pledged shares of stock, greater was the value of the shares of stock, and greater was the likelihood of a debtor's equity in the debt-

or's shares of stock. Also, the same debt being secured by each package of collateral, if the bank liquidated any of the collateral, the debt would be reduced. If it were assets of Mobile F/S, the value of the shares of stock would be unaffected, increasing the likelihood of equity in the stock as collateral for a diminishing debt. If some shares of stock were liquidated, the size of the debt would be reduced but the smaller debtor would be secured by the same package of assets of Mobile F/S, thereby increasing the likelihood that the bank's security interest in the remaining shares of stock would be adequately protected.

## V. CONCLUSIONS BY THE COURT

While the bank was not entitled to relief from the stay provided by Section 362(a), at the conclusion of the trial (May 9, 1980), the rightfulness or appropriateness of the stay in a case such as this will be a continuing question. Besides annulling or terminating the automatic stay, the Court may grant relief from the stay "by modifying or conditioning such stay". In reconsidering this proceeding, the Court is aware of several indisputable developments subsequent to the trial—matters of which the Court may take judicial knowledge.

■ These matters are unfavorable to the bank's position as a secured creditor in these two cases and increase the likelihood of unwarranted harm to the bank from a lack of any relief from the stay. These matters include:

(1) Substantially all of the personal property of Mobile F/S has been sold by the trustee and, while this permitted a payment of $707,000.00 on the debt owed to the bank, it contributed to the elimination of any "going-concern" value which Mobile F/S may have had;

(2) The trustee of Mobile F/S (appointed prior to the trial) has not mined any coal from the Mobile F/S properties;

(3) The trustee of Mobile F/S is engaged in litigation in an effort to renew several leases to Mobile F/S which were

not renewed at their expiration dates, under options of the lessee to renew;

(4) The trustee does not have a firm offer of purchase for the leases and real property of Mobile F/S but is attempting to conclude a sale under a contingent offer of purchase, at a price which would produce considerably less money than enough to pay the balance of the debt owed to the bank;

(5) No plan of reorganization has been proposed in the Mobile F/S case, and the trustee reports that none is feasible;

(6) No plan of reorganization has been proposed in the cases of Debtors Robson and Nielsen, and

(7) Interest on the balance of the debt owed to the bank by Mobile F/S, has accrued since the trial.

Although relief from the stay in the form of terminating the stay is not to be granted, the Court's order at this time, on reconsideration, should condition its continuance as hereinafter provided.

## VI. ORDER OF THE COURT

In view of the foregoing and for good cause shown or found, it is ORDERED by the Court, in each of the above-styled proceedings, as follows:

1. As to the bank (plaintiff), the stay under Section 362(a), Title 11, United States Code, is continued in force, except as hereinafter provided;

2. Unless the debtor (defendant) files a written objection by 12:00 o'clock Noon, Central Standard Time, on February 9, 1981, and shows good cause to the contrary at a hearing before this Court, in the Bankruptcy Courtroom, 120 United States Courthouse, Anniston, Alabama, on February 10, 1981, at 2:00 o'clock p. m., the Court will take judicial knowledge of the matters hereinabove indicated;

3. Unless, by 12:00 Noon, Central Standard Time, on February 12, 1981, the debtor (defendant) files a demand for a hearing upon, and a request for, continuance of such stay, alleging sufficient grounds for a continuance of such stay, the stay under said Section 362(a) shall have terminated at that time, as to the debtor's shares of stock in Mobile Fuel Shipping, Inc.;

4. If the debtor (defendant) timely files such demand for a hearing and request, the Court will order the stay, as to the debtor's shares of stock in Mobile Fuel Shipping, Inc., under said Section 362(a), terminated, modified, or conditioned, unless the debtor (defendant) appears before this Court at said Bankruptcy Courtroom for a hearing, on February 17, 1981, at 2:30 o'clock p. m., and shows good cause to the contrary, excepting the issue of the debtor's equity in said shares of stock of Mobile Fuel Shipping, Inc.;

5. Each objection, demand, or request aforesaid must contain a certificate by the attorney for the debtor (defendant) that a copy was duly served upon the attorney for the bank (plaintiff); and

6. A copy of this order shall be sent through the United States mails to each of the following (which shall be sufficient service and notice hereof): the plaintiff, its attorney, the debtors, the debtors' attorney, the attorney for the trustee of the estate of Mobile Fuel Shipping, Inc., the United States trustee, and Earnest Potter, Esquire.